LESLIE DIALS, *et al.*

*v.*

JOE D. BLAIR, *et al.*

(No. 11078)

JOHNNY SMITH, *et al.*

*v.*

THOMAS DAVIS, *et al.*

(No. 11079)

Submitted November 3, 1959.  Decided November 17, 1959.

*D. Grove Moler, Marshall G. West, Naaman J. Aldredge,* for plaintiffs in error.

*Estep, Smith & Eiland, Edward I. Eiland,* for defendants in error.

BERRY, JUDGE:

These proceedings were instituted in the Circuit Court of Logan County under the provisions of Code, 6-6-7, by citizens, residents and voters of Logan County, West Virginia, hereinafter referred to as petitioners, for the removal of the respondents as members of the Logan County Board of Education, hereinafter referred to as the Board, because of an alleged violation of Code, 61-10-15.

In one proceeding Leslie Dials and twelve other residents and voters of Logan County seek the removal of Joe D. Blair and L. F. Workman as members of the Board. In the other proceeding Johnny Smith and five other residents and voters of Logan County seek the removal of Earl Justice and Thomas Davis as members of the Board. No proceeding was instituted against the fifth member of the Board, Merril Bartram. The two proceedings were consolidated by agreement of the parties by proper order of the Circuit Court because the issues and facts as they apply to both cases are the same.

Answers were filed by all of the respondents and the petitioners demurred to each of the answers. The demurrers were overruled by the trial court and the petitions dismissed. Upon application to this Court, an appeal was granted to the rulings of the trial court.

The petitions for the removal of Blair and Workman alleged that Blair violated the provisions of Code, 61-10-15, in that he was pecuniarily interested in the furnishing of water to the Board by Man Water Works, Inc., a corporation, Earling Water Works, Incorporated, a corporation, and Buffalo Creek Water Company, a partnership, and that Workman, a member and president of the Board knowingly approved the violation of the statute

by voting for the payment of bills submitted by the three water companies for water furnished to certain school buildings with full knowledge of the pecuniary interest Blair had in the three water companies.

The petition for the removal of Davis and Justice as members of the Board was based on the same ground asserted against Workman. If Blair is guilty of a violation of Code, 61-10-15, which would subject him to removal from the Board, then the other members who voted for the payment of the water bills, knowing of Blair's interest in the water companies which furnished the water, are also subject to removal from office, under Code, 6-6-7. *Hunt* v. *Allen,* 131 W. Va. 627, 53 S. E. 2d 509; *Alexander* v. *Ritchie,* 132 W. Va. 865, 53 S. E. 2d 735; *Jordan et al.* v. *McCourt, et al.,* 135 W. Va. 79, 62 S. E. 2d 555.

The answers of Workman, Davis and Justice admitted that they new of Blair's interest in the water companies when they approved the payment of the bills, but for some unexplained reason, the removal proceeding against Workman was abandoned.

The answer of Blair states that he is an officer and stockholder in the Man Water Works, Inc., a corporation; that he owns 9 of the 96 shares of stock in said corporation; that he has never received any dividends in said corporation but receives a monthly salary of $400. as president of this corporation; that he is an officer and stockholder in the Earling Water Works, Incorporated, a corporation, that he owns 125 of the 270 shares of stock in said corporation, that he has received no dividends from said corporation but that he receives a monthly salary of $300. as secretary-treasurer of this corporation; that he is a partner in the Buffalo Creek Water Company and that he has never received any income of any kind from said partnership. He admitted that the three water companies furnished water to certain schools in Logan County and that the water companies had been paid by the Board for the water furnished, but said

that each of the water companies is a public utility supplying water in various areas of Logan County under certificates of public convenience and necessity issued by the Public Service Commission of West Virginia, and subject to regulation and supervision by said Commission; that there is no overlapping of the areas served by these companies, that each is the only water public utility in the area covered by its certificate; that since he has been a member of the Board these companies have been furnishing water to school buildings in the areas served by them at rates set and approved by said Commission and subject to the regulation and supervision thereby; that it is the duty of the Board and its members, under Code, 18-5-9, to provide "all necessary supplies for the schools" and to provide "for the health and cleanliness of the pupils"; that the water companies are the only available sources of water for these schools in the areas in which they serve; that the water companies are required under the law to furnish water to the schools, that he had no voice, influence or control as a member of said Board with regard to the furnishing of water to the schools, that as a member of the Board he was required under the law to see that water was furnished to the schools.

The answers of the other respondents contend the same material facts and by virtue thereof they asserted they had committed no unlawful acts and were not subjected to removal from the Board and prayed that petitions for removal be dismissed. The petitioners' demurrers to the answers admitted all facts well pleaded but contend that Code, 61-10-15, provides for no exceptions.

The mere fact that Blair received a salary as an employee of the water companies would not constitute sufficient grounds for his removal as a member of the Board of Education. See *County Court* v. *City of Grafton*, 77 W. Va. 84, 86 S. E. 924; *Arbogast* v. *Shields*, 123 W. Va. 167, 14 S. E. 2d 4. However, the fact that he was a stockholder and officer in two of the water companies which

were incorporated, and a partner in the water company which was a partnership would be sufficient grounds for his removal from office if he, being a member of the Board and having therein a voice, influence or control, voluntarily, with an alternate choice available, approved a contract for his own company to furnish water to the schools in question. *Alexander* v. *Ritchie,* 132 W. Va. 865, 53 S. E. 2d 735.

Code, 6-6-7 provides the procedure for the removal of any member of the school board for a violation of the provisions of Code, 61-10-15. Code, 61-10-15, provides that any member of the school board directly or indirectly pecuniarily interested in the proceeds of any contract or service awarded or furnished to the Board in which he may have a voice, influence or control shall be removed from office, and a conviction under Code, 61-10-15, is not a prerequisite for such removal procedure. *Jordan, et al.* v. *McCourt, et al.,* 135 W. Va. 79, 62 S. E. 2d 555.

This removal proceeding is based on an alleged violation of Code, 61-10-15, which is a penal statute. Such statutes are to be given a strict construction, and this principle is stated in 17 M.J., Statutes, §67, in the following language: "Penal statutes are construed strictly against the state and favorably to the liberty of the citizen. It is a rule of general application that such statutes are not to be extended by construction, but must be limited to cases clearly within the language used. Every case charged as a violation must come within the letter, spirit and purpose of the statute. And a penal statute cannot be extended by implication or construction. It cannot be made to embrace cases not within the letter though within the reason and policy of the law. To constitute the offense the act must be both within the letter and spirit of the statute defining it."

It is true that members of school boards have been removed from office in this State under the provisions of the statutes relied on in the case at bar, where they have

had pecuniary interest in contracts with the school
boards for furnishing labor, building materials, groc-
eries, construction work and for the sale of car parts to
said boards. *Kesling* v. *Moore*, 102 W. Va. 251, 135 S. E.
246; *Fisher* v. *Jackson*, 107 W. Va. 138, 147 S. E. 541;
*Hunt* v. *Allen*, 131 W. Va. 627, 53 S. E. 2d 509; *Alex-
ander* v. *Ritchie*, 132 W. Va. 865, 53 S. E. 2d 735; *Jordan,
et al.* v. *McCourt, et al.*, 135 W. Va. 79, 62 S. E. 2d 555.
But in each of the above cited cases the contracts with
the Boards were entered into voluntarily, with an alter-
nate choice available, by members of Boards of Education
who had a voice, influence or control in the acceptance
and payment by the Boards for such materials, labor
and supplies furnished by companies in which a board
member was interested. These cases are sound and the
statutes upon which the decisions are based are for the
protection of the public. They are the law of this State
and should remain as such. However, in these cases,
the materials, supplies, etc. could have been obtained
elsewhere, but in the case at bar the water service could
not have been obtained from any other source. We are
of the opinion that under the facts and circumstances of
the instant case it does not come within the purview of
said statutes. The respondent Blair, who owns interest
in the water companies, did not, within the meaning of
the statute, exercise any voice, influence or control in
entering into any contract with the Board of which he
was a member. Upon application to the water companies
to supply water to the schools in question, it was re-
quired, under the law, that said companies furnish suf-
ficient water to supply the needs of the schools, because
they are public utilities under the regulation and super-
vision of the Public Service Commission of the State of
West Virginia. 43 Am. Jur., Public Utilities and Ser-
vices, §22. No express contract was made between the
water companies and the Board, and it could only be
classified in any event as an implied contract. The Board
was under an implied duty imposed upon it by law to
furnish necessary water for the schools in question.
Code, 18-5-9. The water companies in question were the

only sources from which the water necessary to supply the schools could be obtained. Therefore, the respondent Blair would, under the facts in this case, have no voice, influence or control in the matter in question, because it was a duty imposed by law, both for the water companies to furnish the water and for the Board to obtain same. The bills for the water supplied would have to be paid by the Board. An action at law would lie to recover for such service or mandamus would lie to compel the Board to pay for same. *Capitol Gas Co.* v. *Young,* (Cal.) 41 P. 869.

The removal of public officers is discussed in 43 Am. Jur., Public Officers, §193, wherein it is stated: "The remedy by the removal of a public officer has been said to be a drastic one, and the statutory provision defining the grounds for removal is given a strict construction." It has been held in a removal proceeding that where there is a reasonable difference of opinion with regard to the law applicable and a violation thereof, a public officer should not be removed. *State* v. *Roth,* (Iowa) 144 N. W. 339.

Under the circumstances of this case, it would appear that Blair had no discretion in the matters involved, either in the furnishing of the water to the schools or for the payment of the bills rendered for such water. It is mandatory for the water companies to furnish the services and for the Board to pay for same. It was not intended for such a case to come within the meaning of the provisions of the statutes relied on here for the removal of Blair, and if the statutes do not apply to Blair, they of course do not apply to the other respondents, Davis and Justice, other members of the Board. If Blair is not guilty of violating Code 61-10-15, and we so find, then none of the respondents could be removed from office in this proceeding.

The judgment of the Circuit Court of Logan County is affirmed.

*Judgment affirmed.*