EDINGER v. METZGER, SHERIFF, ET AL.

(No. 7273—Decided September 6, 1972.)

*Mr. John J. Callahan*, for petitioner.

*Mr. Harry Friberg*, prosecuting attorney, and *Mr. Joseph Jan*, for respondents.

POTTER, P. J. This cause is before the court on petitioner-relator's petition for a writ of habeas corpus and in the alternative his petition for a writ of procedendo. An alternative writ of habeas corpus was issued.

The petitioner alleges that he was remanded to the custody of the respondent sheriff on July 28, 1972, and was bound over to the Court of Common Pleas of Lucas County on the charge of murder in the first degree. His motion for admission to bail was denied by the Common Pleas Judge who found that:

"* * * on the basis of *Furman* v. *Georgia*,     U. S.    ; S. Ct.    , 40 U. S. L. W. 4923 (decided June 29, 1972) and *State* v. *Leigh*, 31 O. S. 2d 97 (1972), that the defendant, charged with violation of Sec. 2901.01, Ohio Re-

vised Code, murder in the first degree, is not entitled to be admitted to bail as a matter of right."

Petitioner alleges that he is being detained and restrained of his liberty in violation of Article I, Section 9, of the Ohio Constitution, and the Fifth and Fourteenth Amendments to the Constitution of the United States.

Respondent asked the court to accept the facts as pleaded by petitioner.

Petitioner asserts that if the penalty of death cannot be inflicted for a violation of R. C. 2901.01, it follows that murder in the first degree is no longer a capital offense in Ohio and that petitioner comes within the provisions of Article I, Section 9 of the Ohio Constitution. In his brief filed prior to oral argument, respondent concurs with petitioner's theory of the case. As authority for his position, respondent cites *State* v. *Johnson*, No. A-164 (N. J. Sup. Ct., Dec. July 20, 1972), and distinguishes *People* v. *Anderson* (1972), 6 Cal. 3d 628, 493 P. 2d 880.

We conclude that the decision of the United States Supreme Court in *Furman* v. *Georgia* (1972), U. S. , 33 L. Ed. 2d 346, holding that the imposition and carrying out of the death penalty in the cases therein under consideration constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments, and followed by the Ohio Supreme Court in *State* v. *Leigh* (1972), 31 Ohio St. 2d 97, compels us to hold that the petitioner has a constitutional right to bail under Article I, Section 9 of the Ohio Constitution. Article I, Section 9, is as follows:

"All persons shall be bailable by sufficient sureties, except for capital offenses where the proof is evident, or the presumption great. Excessive bail shall not be required; nor excessive fines imposed; nor cruel and unusual punishments inflicted."

A "capital offense" has been uniformly defined as one where death may be imposed. See *In re Berman* (1949), 86 Ohio App. 411, 414, 87 N. E. 2d 716; *State* v. *Pett* (1958), 253 Minn. 429, 92 N. W. 2d 205; *In re Ball* (1920), 106 Kan. 536, 188 P. 424; *State* v. *Johnson*, No. A-164 (Sup. Ct. N.

J., Dec. July 20, 1972); 8 Am. Jur. 2d 801, Bail and Recognizance, Section 30; 8 C. J. S. 66, Bail, Section 34(1). R. C. 2901.01 contains the following provision:

"Murder in the first degree is a capital crime under Sections 9 and 10 of Article I, Ohio Constitution."

This provision was struck down by the holding in *Furman, supra.* To now hold that murder in the first degree under this provision of R. C. 2901.01 is a capital offense is to amend the Constitution, a right resting exclusively with the people. See *State* v. *Pett* (1958), 253 Minn. 429, 92 N. W. 2d 205.

Holding to this view, the contention in *People* v. *Anderson,* 6 Cal. 3d 628, 493 P. 2d 880, with reference to the gravity of the offense determining the right to bail is constitutionally untenable, although it may be desirable. See *State* v. *Pett* (1958), 253 Minn. 429, 92 N. W. 2d 205, at 206.

The decision of the Supreme Court of the United States, *Furman* v. *Georgia, supra,* as forecasted[1] has caused

---

[1] See statements of Mr. Chief Justice Burger at 33 L. Ed. 2d 442:

"While I would not undertake to make a definitive statement as to the parameters of the court's ruling, it is clear that if state legislatures and the Congress wish to maintain the availability of capital punishment, significant statutory changes will have to be made."

At 33 L. Ed. 2d 444:

"Since there is no majority of the court on the ultimate issue presented in these cases, the future of capital punishment in this country has been left in an uncertain limbo. Rather than providing a final and unambiguous answer on the basic constitutional question, the collective impact of the majority's ruling is to demand an undetermined measure of change from the various state legislatures and the Congress."

At 33 L. Ed. 2d 445:

"* * * Virtually nowhere has change been wrought by so cruel a tool as the Eighth Amendment. The complete and unconditional abolition of capital punishment in this country by judicial fiat would have undermined the careful progress of the legislative trend and foreclosed further inquiry on many as yet unanswered questions in this area."

Mr. Justice Blackmun, at 33 L. Ed. 2d 449:

"I trust the Court fully appreciates what it is doing when it decides these cases the way it does today. Not only are the capital punishment laws of 39 states and the District of Columbia stricken

confusion not only in regard to bail but predictably also in regard to indictment, jury selection and trial, there being no common-law criminal procedure in Ohio.

It is a matter certainly demanding the immediate attention of the Legislature in the area of statutory enactments and perhaps Constitution amendment proposals. In this regard, attention is directed to the American Bar Association Standards Relating to Pretrial Release, particularly Part V. It is noted that the late Honorable Kingsley A. Taft, former Chief Justice of the Supreme Court of Ohio, served on the committee.

The petition for a writ of habeas corpus is denied. A writ of procedendo is issued directing Judge George N. Kiroff to proceed according to law to set bail for petitioner.

*Judgment accordingly.*

WILEY, J., concurs.
SMITH, J., retired, dissents.

WILEY, J., concurring. I concur in the judgment and opinion of the court as a logical step in the long history of the right to bail. In England, and also in the Colonies prior to the Revolutionary War, the pre-trial release of a prisoner was being established as a right rather than a discretionary benefit granted by a court. This right developed strongly in the major colonies of Massachusetts, Pennsylvania and Virginia; was recognized in the Continental Congress by the adoption of the Northwest Ordinance; was

---

down, but also all those provisions of the federal statutory structure that permit the death penalty apparently are voided."

Mr. Justice Powell, at 33 L. Ed. 2d 452:

"* * * At least for the present, it also bars the States and the federal government from seeking sentences of death for defendants awaiting trial on charges for which capital punishment was heretofore a potential alternative. * * * Less measurable, but certainly of no less significance, is the shattering effect this collection of views has on the root principles of stare decisis, federalism, judicial restraint and—most importantly—separation of powers."

included in the Judiciary Act (1 Statute 91, Sec. 33 [1789]) ; and was written into the constitutions of some thirty-eight states, including Ohio.

In colonial days, both in England and in the Colonies, numerous offenses were punishable by death. For example, Massachusetts punished thirteen offenses with death in 1641.[2]

As time went on, the number of crimes punishable by death diminished, so that by 1972 nine states had eliminated the death penalty completely, five others restricted it to extremely rare crimes, and thirty-eight retained it only for murder and in some states also for rape. *Furman, supra,* 33 L. Ed. 2d 405, footnotes 51 and 52. By its decision in *Furman, supra,* on June 29, 1972, the Supreme Court in a case involving first degree murder and two cases involving rape, declared that the imposition and carrying out of the death penalty as arrived at in the three cases decided constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. Consequently, with the exception of such capital offenses, which continue to exist as a result of the death penalty provided by R. C. 2901.09, as to the President, Vice-President or a person in line of succession to the presidency, and R. C. 2901.10, as to the Governor or Lieutenant Governor of a state or territory of the United States, capital offenses presently no longer exist in Ohio. *State* v. *Leigh,* 31 Ohio St. 2d 97, at 99.

---

[2]For a scholarly and well documented article on this historic development, see University of Pennsylvania Law Review, Crisis in Bail, Vol. 113, p. 959 (1965), by Caleb Foote, Prof. of Law, University of Pennsylvania.