OPINION
Defendant-appellant Charles E. Favors (hereinafter "Favors") appeals his conviction and sentence in the Fairfield County Court of Common Pleas on one count of assault with a physical harm specification. Plaintiff-appellee the State of Ohio cross appeals the decision of the trial court to sentence Favors pursuant to S.B. No. 2 when the offense occurred in 1995, prior to the effective date of S.B. No. 2.
 STATEMENT OF THE FACTS AND CASE
On the afternoon of May 15, 1995, Favors, who was an inmate at the Southeastern Correctional Institution, was on duty as a porter at the M-Dormitory. At approximately 2:00 p.m., the corrections officers were changing the guard as the first shift prepared to depart and the second shift arrived for duty. Corrections Officer Sherrie Patrick relieved Corrections Officer Nolan at the M-Dormitory. During a shift change, inmates are required to be in their respective dormitories. When Patrick arrived, an inmate, who did not belong on the floor, was present in the lobby area. Corrections Officer Nolan escorted the inmate to his appropriate dormitory.
As Patrick prepared to lock the door, Favors stood in the doorway in front of her and another inmate stood behind her. Upon the corrections officer's orders, the inmate behind her moved away. When Patrick instructed Favors to re-enter the dormitory, he refused. Patrick's second instruction was likewise ignored. Thereafter, Favors pushed against Patrick's chest with his arm in an attempt to exit the dormitory. Patrick pushed Favors off of her. As she turned to lock the dormitory door, she heard a commotion behind her. When she turned around, Patrick observed Favors charging toward her. Within moments, Patrick was going out the door with her feet off the ground. She landed on her back, striking her head on the concrete. Favors landed on top of her. Although Patrick appeared lifeless, Favors began aggressively hitting her. Armondo Tavison, an asbestos removal expert who was working at the M-Dormitory when the attack ensued, pulled Favors off of Patrick. As a result of the attack, Patrick suffered a severe concussion and a laceration to the back of her skull, which required stitches.
On July 21, 1995, the Fairfield County Grand Jury indicted Favors on one count of felonious assault and one count of assault with a physical harm specification. On November 14, 1995, a jury trial commenced. After hearing the evidence and deliberations, the jury found Favors not guilty of felonious assault, but guilty of assault with the physical harm specification. The trial court sentenced Favors to a term of three to five years incarceration at the Southern Ohio Correctional Facility in Lucasville, Ohio. The trial court ordered the sentence to be served consecutively to the sentence he was already serving. Favors timely appealed his conviction. On September 5, 1996, this Court reversed the conviction in State v. Favors (Sept. 5, 1996), Fairfield App. No. 95-CA-77, unreported. Upon remand, the trial court set the matter for trial. On May 12, 1997, Favors filed a Motion to Dismiss the Indictment on double jeopardy grounds. The motion was based upon the following facts. Immediately following the incident, agents of the Ohio Department of Rehabilitation and Corrections conducted an investigation into the incident. As a result of the investigation, the Rules Infraction Board ("RIB") found Favors guilty of assaulting Corrections Officer Patrick. Thereafter, the RIB declared Favors had engaged in felonious conduct, which warranted indictment and prosecution. The Department of Rehabilitation and Corrections transferred Favors to the Southern Ohio Correction Facility, where he was placed in solitary confinement. Favors alleged the time in solitary confinement constituted "punishment" for double jeopardy purposes.
Prior to the commencement of the second trial, Favors also filed a motion requesting the trial court apply the penalties set forth in S.B. No. 2 to any re-sentencing resulting from a subsequent conviction. The trial court overruled both motions.
On August 26, 1997, the matter proceeded to a jury trial. After hearing all the evidence and deliberations, the jury found Favors guilty of assault with a specification.
At the sentencing hearing on August 30, 1997, Favors again raised the issues of double jeopardy and the S.B. No. 2 sentencing requirement. At the hearing, the trial court learned Favors had been in solitary confinement for over two (2) years. With respect to the sentencing, Favors requested the trial court reconsider its prior ruling in light of this Court's decision in State v. Rush
(July 7, 1997), Stark App. No. 1996CA00419, unreported. The trial court found, pursuant to Rush, supra, Favors was entitled to be sentenced under S.B. No. 2. Accordingly, the trial court sentenced Favors to a term of incarceration of ten months. The court ordered the sentence to be served consecutively to the sentence Favors is currently serving.
It is from the conviction and sentence Favors prosecutes this appeal raising the following assignments of error:
 I. THE TRIAL COURT ERRED WHEN IT OVERRULED DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FILED ON MAY 12, 1997 ON THE GROUNDS OF DOUBLE JEOPARDY AND THEREBY DENIED DEFENDANT HIS RIGHTS UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AS WEL [SIC] AS ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION (SEE TR III, 642, LINE 15 AND TR III, 648 LINE 15-649 LINE 3, TR III 650, LINES 1-3)
 II. THE EVIDENCE WAS SUCH THAT REASONABLE MINDS COULD ONLY CONCLUDE THAT THE AFFIRMATIVE DEFENSE OF SELF DEFENSE HAD BEEN PROVEN BY A PREPONDERANCE OF EVIDENCE (TR II, 285, 288, 290, 352, 353, 355, LINES 14-16, 356, LINES 3-6, TR III, 490, 494, LINE 18-495, LINE 21, 498 LINE 21, — 499, LINE 5)
The State of Ohio cross-appeals raising as its sole assignment of error:
 I. THE DECISION BY THE TRIAL COURT TO SENTENCE APPELLANT PURSUANT TO SENATE BILL 2 WHEN THE CRIME OCCURRED ON MAY 15, 1995, WAS CONTRARY TO LAW. (R.P. 632-633)
Any remaining pertinent facts will be contained in our discussions of the assignments of error.
 I
In his first assignment of error, Favors maintains the trial court erred in overruling his motion to dismiss on double jeopardy grounds. Specifically, Favors argues the RIB's disciplinary action of placing him in solitary confinement for a period of over two years constituted "punishment" for double jeopardy purposes so as to preclude a second trial and criminal sentencing.
 The Double Jeopardy Clauses of the Ohio and United States Constitutions prohibit subsequent prosecution for the same offense after acquittal or conviction as well as multiple punishments for the same offense.
 United States v. Dixon (1993), 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556; State v. Gustafson (1996), 76 Ohio St.3d 425.
In State v. Keller (1976), 52 Ohio App.2d 217, the Court of Appeals for Union County concluded:
 Administrative sanctions imposed by prison officials upon a prisoner for a violation of prison rules of conduct do not raise the bar of double jeopardy against the prosecution of that prisoner for a statutory offense arising from the course of conduct for which the disciplinary measures were taken.
 Id. at headnote.
Punitive and remedial interests are "tightly intertwined" in the prison context, where the government's remedial interests is to maintain order and discipline among a population of criminals.United States v. Hernandez-Fundora (C.A. 2, 1995), 58 F.3d 802,806. Thus, even though disciplinary action taken by prison officials may have a punitive component, the action does not constitute "punishment" for double jeopardy purposes. In deciding what is needed to preserve order and discipline in a prison setting, this Court must defer to the expertise of prison officials. United States v. Newby (C.A. 3, 1993), 11 F.3d 1143,1146, certiorari denied (1994), 513 U.S. 834, 115 S.Ct. 111,130 L. Ed.2d 58.
If this Court were to accept the position asserted by Favors, the result would seriously hinder the ability of prison officials to use their expertise to maintain order and discipline in the institutions of this State. Under Favor's scenario, prison officials would be able to promptly address violations of prison regulations which do not rise to the level of criminal behavior, however, the officials would be precluded from addressing more heinous behavior without sacrificing subsequent criminal prosecution and punishment. Hernandez-Fundora, supra, at 807. Furthermore, due to the difficulties and delays often associated with criminal prosecutions, criminal prosecution and punishment would be an inadequate means in which to maintain prison order and discipline. See, Newby, supra, at 1146.
Since the disciplinary action taken by the RIB did not constitute "punishment" for the purposes of double jeopardy, we find the trial court did not err in overruling favors' motion to dismiss.
Favor's first assignment of error is overruled.
 II
In his second assignment of error, Favors contends he proved the affirmative defense of self-defense by a preponderance of the evidence. In order to prevail on a claim of self-defense, appellant must establish the following elements by preponderance of the evidence:
1. the accused was not at fault in starting the affray;
 2. that she had a bona fide belief that she faced imminent danger of death or great bodily harm;
 3. that her only means of escape was the use of such force; and
 4. that she violated no duty to retreat or avoid the danger.
State v. Williford (1990), 49 Ohio St.3d 247, 249.
At trial, Corrections Officer Lisa Rodak Carlisle testified on the day of the incident, she heard Corrections Officer Patrick order several inmates to "get back". Thereafter, Carlisle observed an airborne Patrick coming through the door, along with an inmate whose body was in contact with Patrick's body. As she landed on the ground, Patrick hit her head on the concrete. The inmate landed on top of her and proceeded to strike the fallen corrections officer in a double fisted manner. Carlisle noted Patrick was not moving while the inmate was hitting her. After approximately 20 seconds, Carlisle observed a man, whom she later learned was Tavison, extricate the inmate from Patrick's body.
Tavison testified he was talking to his supervisor on the telephone when he heard an officer loudly say, "go back". Although he could not recall the words, Tavison remembered hearing a male voice respond in an aggressive tone. When he observed a female corrections officer being attacked by an inmate, Tavison dropped the telephone and turned toward the commotion. Tavison watched the corrections officer go through the door, airborne, while the inmate continued to swing at her. Tavison attempted to restrain the inmate as he aggressively hit the fallen corrections officer. Ultimately, Tavison was successful in his attempt to end the attack.
Several inmates testified on Favors' behalf. Although they all testified Patrick initiated the affray and escalated the situation, the details of the assault were conflicting. Favors admitted being the inmate involved in the incident with Patrick.
The weight to be given evidence and the determination of the credibility of witnesses is within the province of the trier of fact, not the appellate court. State v. Jamison (1990),49 Ohio St.3d 182. This Court merely determines whether sufficient evidence was presented to support the conviction. The trier of fact was free to accept or reject all or any part of the testimony of the witnesses and assess the credibility of those witnesses. Despite the fact Carlisle and Tavison did not witness the entire altercation, their testimony provided sufficient evidence from which the jury could find Favors did not prove the affirmative defense of self-defense by a preponderance of the evidence.
Favor's second assignment of error is overruled.
 CROSS APPEAL
In their cross appeal, the State contends the trial court's decision to sentence Favors pursuant to S.B. No. 2 was contrary to law.
Herein, the State asks us to revisit our decision in State v.Rush (July 7, 1997), Stark App. No. 96CA419, unreported. Upon doing so, we adhere to our decision in Rush, supra, and overrule the cross assignment error.
The conviction and sentence of the Fairfield County Court of Common Pleas is affirmed.
By: Hoffman, J., Farmer, P.J. and Gwin, J. concur.
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Fairfield County Court of Common Pleas is affirmed. Costs to be assessed to both appellant and appellee equally.